*854
 
 OPINION
 

 Per Curiam:
 

 In these consolidated appeals we consider the constitutionality of NRS 453.322(l)(b), which criminalizes possession of a majority of the ingredients required to manufacture a controlled substance. The district court granted respondents Kit Jerome Burdg’s and Alice Mae Burdg’s petitions for writs of habeas corpus (No. 38105) and granted respondents Stephen Glenn Santillanez’s and Larry Shawn Early’s motions to dismiss (No. 38264). In both orders, the district court found NRS 453.322(l)(b) to be void for vagueness, and therefore, unconstitutional. We agree and affirm the district court’s ruling.
 

 FACTS
 

 Kit and Alice Burdg
 

 Detective Tim Kuzanek of the Washoe County Sheriff’s Office, who was assigned to the Consolidated Narcotics Unit, received information in late 1998 and early 1999 about a methamphetamine manufacturing operation at 294 East Ninth Street in Sun Valley. Based on this information, on August 24, 2000, Detective Kuzanek examined the garbage from the property. This revealed several items that are commonly seen at methamphetamine operations, including a possible chemical bottle and pH
 
 *855
 
 papers, which are used to test acidic or base levels when manufacturing methamphetamine. Using this evidence, Detective Kuzanek obtained a search warrant for the property, which belonged to Kit Burdg.
 

 That same day, law enforcement officers conducted a search of the property. During the search, law enforcement officers found several items in a shed that was located on the property, including flasks, funnels, scales, gloves, stained rags, pH papers, a hot plate, duct tape, coffee filters, aspirin, an electric fan, razor blades, plastic bottles, drug paraphernalia, jars, matches without striker plates, ephedrine tablets, a bottle of hydrogen peroxide, a butane torch, a can of Coleman fuel, bottles of Red Devil lye, a bottle suspected of containing iodine, a container suspected of containing acid, and a can suspected of containing acetone. Officers also found in the shed papers with Kit’s name and a ‘ ‘pay and owe” sheet.
 
 [1]
 
 Notably, a presumptive chemical test conducted on some white powder obtained from the property was positive for the presence of pseudoephedrine, a chemical used to manufacture methamphetamine.
 

 Kit Burdg voluntarily turned himself in following the search, and he was arrested. Alice Burdg, Kit’s wife, was arrested soon thereafter.
 

 Alice and Kit Burdg were charged with the crime of possession of a majority of the ingredients required to manufacture a controlled substance, a felony violation under NRS 453.322(l)(b). On September 25, 2000, a preliminary hearing was held. At the preliminary hearing there was conflicting testimony regarding the ingredients required to manufacture methamphetamine. Detective Kuzanek testified that he had made methamphetamine under laboratory conditions, using “red phosphorus, iodine, ephedrine or pseudoephedrine, Coleman fuel, muriatic acid, [and] Red Devil lye.” Christopher Adduci, an agent for the Drug Enforcement Administration, testified that “two or three substances are adequate” to manufacture methamphetamine. Agent Adduci testified that the ingredients used to manufacture methamphetamine were not themselves controlled substances, but were “common substances,” consisting of pseudoephedrine (an ingredient in many common household cold/flu medicines), red phosphorus (which can be extracted from common household matches), and iodine. He also indicated that “there can be others,” but he could not testify as to what other chemical substances were needed. After the preliminary hearing, Alice and Kit were bound over on the charged crime.
 

 
 *856
 
 On November 13, 2000, Kit filed a pretrial petition for writ of habeas corpus, arguing among other things that NRS 453.322(l)(b) is unconstitutionally overbroad and vague. Alice joined in Kit’s petition, adopting his argument, but she added an additional argument — the State failed to present any evidence that Alice resided on the property when the raid occurred. On June 6, 2001, the district court granted the Burdgs’ petitions for writs of habeas corpus, ruling that NRS 453.322(l)(b) is void for vagueness, and therefore is unconstitutional.
 

 Stephen Santillanez and Larry Early
 

 On September 28, 2000, the Washoe County Consolidated Narcotics Unit arrested Stephen Glenn Santillanez and Larry Shawn Early. They too were charged with possession of a majority of the ingredients required to manufacture a controlled substance in violation of NRS 453.322(l)(b). The specific controlled substance was methamphetamine.
 

 On May 10, 2001, Santillanez and Early filed motions to dismiss, arguing that NRS 453.322(l)(b) is unconstitutionally vague and overbroad. In its opposition to the motions, the State made an offer of proof regarding the evidence it believed supported the charge. The State proffered that several bottles and other containers were recovered during the execution of a search warrant for the premises controlled by Santillanez and Early. Chemical samples were tested at the Washoe County Crime Lab, and the test revealed the following chemicals: iodine, ephedrine, pseu-doephedrine, red phosphorus, hydrochloric acid, and methamphetamine. On July 3, 2001, the district court granted Santillanez’s and Early’s motions to dismiss following its ruling in the Burdg case. The State appealed both rulings. We consolidated the two appeals.
 

 DISCUSSION
 

 NRS 453.322(l)(b) provides that it is unlawful for a person to “[pjossess a majority of the ingredients required to manufacture or compound a controlled substance other than marijuana, unless he is at a laboratory that is licensed to store such ingredients.” The district court held that the statute is void for vagueness because “[i]t is a criminal statute which contains no
 
 mens rea
 
 requirement, and infringes on an individual’s liberty interest’ ’ and further, because “the statute does not provide sufficiently specific limits on the enforcement discretion of the police.” The State challenges the district court’s ruling on two grounds: the district court did not determine whether the statute is vague as applied to the defendants (in both cases), and the district court failed to address whether the statute is vague in all of its applications.
 

 
 *857
 
 Resolution of these appeals involves the constitutionality of a statute, which is a question of law that this court reviews de novo.
 
 [2]
 
 This court has stated, “[statutes are presumed to be valid, and the burden is on the challenger to make a clear showing of their unconstitutionality.”
 
 [3]
 
 To overcome this burden, there must be a “clear showing” of invalidity.
 
 [4]
 

 “The doctrine that a statute is void for vagueness is predicated upon its repugnancy to the due process clause of the Fourteenth Amendment to the United States Constitution.’ ’
 
 [5]
 
 A statute is void for vagueness if it fails to define the criminal offense with sufficient definiteness that a person of ordinary intelligence cannot understand what conduct is prohibited and if it lacks specific standards, encouraging arbitrary and discriminatory enforcement.
 
 [6]
 
 The Supreme Court has also held that a facial-vagueness challenge is appropriate when the statute implicates constitutionally protected conduct or if the statute “is impermissibly vague in all of its applications.”
 
 [7]
 
 But “[a] challenger who has engaged in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.”
 
 [8]
 

 Under any of the tests noted above, we conclude that a facial-vagueness challenge is appropriate. More specifically, we conclude that NRS 453.322(l)(b) is facially vague because it infringes on constitutionally protected conduct, is incapable of any valid applications, fails to provide sufficient notice of the prohibited conduct, and encourages arbitrary and discriminatory enforcement. First, this criminal statute contains no intent element, and consequently the statute imposes criminal sanctions on what is otherwise non-criminal activity. We recognize that the “evil” that NRS 453.322(l)(b) addresses is clearly the manufacturing of controlled substances, and the statute is not meant to
 
 *858
 
 convict a person simply because that person possesses a combination of a few common household items. But without an intent element, the statute infringes on an individual’s liberty interest.
 
 [9]
 

 During oral argument, the State asserted that it is common practice to build in a
 
 mens rea
 
 requirement when a statute is not explicit. However, we note that the general intent statute, NRS 193.190, does not alleviate the absence of an intent element in NRS 453.322(l)(b) because it is unclear where an intent element would be implied. For instance, the statute at issue is missing not only the intent to possess a majority of the ingredients required to manufacture, but more significantly, the intent to possess those ingredients for the purpose of manufacturing a controlled substance.
 

 In addition to missing an intent element, the statute fails to provide a person of ordinary intelligence with fair notice of what conduct is prohibited. In particular, it fails to list the items that might be described as “ingredients” required to manufacture or compound a controlled substance. An “ingredient” is commonly defined as “something that enters into a compound or is a component part of any combination or mixture.”
 
 [10]
 
 The legislative history of NRS 453.322(l)(b) indicates that the Legislature enacted the statute because of concerns regarding methamphetamine labs. The Assembly Committee on Judiciary was presented with an exhibit titled “Methamphetamine Lab Indicators,” which, according to the committee’s minutes, was a list of ingredients of methamphetamine.
 
 [11]
 
 However, that list includes items other than those that would fit the common definition of “ingredients,” such as pots and pans, tubing, funnels, buckets, bottles, and coffee grinders and filters.
 
 [12]
 
 The list does not indicate what “ingredients” are required to manufacture a controlled substance such as methamphetamine.
 

 Moreover, we conclude that the absence of an intent element and the ambiguities regarding the required ingredients allow arbitrary and discriminatory enforcement. Thus, NRS 453.322(l)(b), as written, fails to provide law enforcement with adequate
 
 *859
 
 guidance concerning the precise scope of activities it aspires to proscribe.
 

 Because we conclude that NRS 453.322(l)(b) is facially vague, we need not address the State’s remaining arguments concerning overbreadth and an as-applied analysis. For the same reason, we need not address the Burdgs’ sufficiency of the evidence argument.
 

 CONCLUSION
 

 We hold that NRS 453.322(l)(b) is void for vagueness on its face. Therefore, NRS 453.322(l)(b) violates the Fourteenth Amendment to the United States Constitution, and Article 1, Section 8 of the Nevada Constitution. Accordingly, we affirm the district court’s order declaring NRS 453.322(l)(b) unconstitutional.
 

 [1]
 

 Officer Steve O’Farrell, who participated in the execution of the search warrant, testified at the preliminary hearing that a “pay and owe sheet” is “a list that people would make for monies owed or product [controlled substance] given out.”
 

 [2]
 

 SHS v. United Exposition Services Co.,
 
 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).
 

 [3]
 

 Childs v. State,
 
 107 Nev. 584, 587, 816 P.2d 1079, 1081 (1991).
 

 [4]
 

 Sheriff v. Martin, 99
 
 Nev. 336, 340, 662 P.2d 634, 637 (1983).
 

 [5]
 

 Woofter v. O’Donnell,
 
 91 Nev. 756, 762, 542 P.2d 1396, 1400 (1975);
 
 see also Cunningham
 
 v.
 
 State,
 
 109 Nev. 569, 570, 855 P.2d 125; 125 (1993) (stating that a statute that does not give fair notice of prohibited conduct, “is violative of the Due Process Clause, Article 1, Section 8 of the Nevada Constitution”).
 

 [6]
 

 Kolender
 
 v.
 
 Lawson,
 
 461 U.S. 352, 357 (1983).
 

 [7]
 

 Hoffman Estates v. Flipside, Hoffman Estates,
 
 455 U.S. 489, 497 (1982);
 
 accord Martin, 99
 
 Nev. at 340, 662 P.2d at 637.
 

 [8]
 

 Martin, 99
 
 Nev. at 340, 662 P.2d at 637.
 

 [9]
 

 Cf. Chicago
 
 v.
 
 Morales,
 
 527 U.S. 41, 55 (1999) (Stevens, J., concurring) (applying a facial-vagueness analysis to a Chicago ordinance that required a police officer to give an order of dispersal upon observing a person whom he reasonably believed to be a street gang member loitering in a public place with one or more persons because the ordinance “is a criminal law that contains no
 
 mens rea
 
 requirement, and infringes on constitutionally protected rights” (citations omitted)).
 

 [10]
 

 Webster’s Collegiate Dictionary
 
 622 (9th ed. 1985).
 

 [11]
 

 Hearing on A.B. 454 Before the Assembly Comm. on Judiciary, 70th Leg., 15 & ex. F (Nev., March 19, 1999).
 

 [12]
 

 Id.
 
 ex. F.