CHRISTOPHER PAUL SANDERS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 39702

April 28, 2003        67 P.3d 323

[Rehearing denied June 18, 2003]

[En banc reconsideration denied August 29, 2003]

*Harold Kuehn,* Tonopah, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Robert S. Beckett,* District Attorney, and *Erik A. Levin,* Deputy District Attorney, Nye County, for Respondent.

Before ROSE, MAUPIN and GIBBONS, JJ.

## OPINION

*Per Curiam:*

In this appeal, we consider the constitutionality of NRS 201.051, which provides an affirmative defense to felony nonsupport. We hold that this statute is not vague, and thus, is constitutional.

We next consider whether NRS 201.020, the felony nonsupport statute, is ambiguous. We hold that the plain language of the statute

is clear, and that arrearages reduced to judgment by a support order should be included in calculating arrearages under NRS 201.020.

We finally consider whether incarceration may be asserted as an affirmative defense to felony nonsupport pursuant to NRS 201.051. Although we hold that incarceration may be asserted as an affirmative defense, we conclude that it was within the jury's province to decide that incarceration was not an affirmative defense in this instance.

## FACTS

On June 30, 1998, the district court ordered Christopher Paul Sanders to pay $510 per month in child support for his two minor children and reduced his $9,475 in arrearages to judgment. On April 5, 2001, the State charged Sanders with felony nonsupport under NRS 201.020 after he failed to make any child support payments as ordered by the district court. Before trial, Sanders asserted an affirmative defense under NRS 201.051, claiming that he was unable to pay child support because he could not secure sufficient employment while incarcerated.

Sanders was incarcerated for approximately twenty-one months during the thirty-three-month period from the date the district court ordered Sanders to pay child support to the date the State filed the criminal complaint. Sanders worked on the fire support crew while incarcerated in the Nevada State Prison, earning a starting salary of $2.10 per day. Sanders claimed that he was left with about $27 per month to spend on commissary items because his earnings first went to room and board, restitution, the Policeman's Retirement Fund, and debts owed to the prison for services received. Thus, Sanders maintained that he was unable to pay child support while incarcerated.

Sanders, however, acknowledged that he failed to make any child support payments while not incarcerated. He claimed that he had trouble securing employment, but also he admitted that he did not pay child support even when he was employed for a short while.

Sanders also attacked the "fuzzy math" that the State used to calculate his arrearages. Essentially, Sanders argued that his arrearages did not exceed the $10,000 threshold set out in NRS 201.020, and thus, he was not guilty of felony nonsupport. Sanders argued that the State should not have included his arrearages reduced to judgment in calculating his total arrearages. He also argued that his obligation to pay child support was suspended during his incarceration; therefore, his arrearages did not exceed $10,000.

The State argued that Sanders did not show that he was entitled to an affirmative defense under NRS 201.051 because his unemployment was "without good cause." Specifically, the State argued

that incarceration should not be used as an affirmative defense because Sanders' inability to pay was voluntary, given that he voluntarily committed the crimes that led to his incarceration and subsequent inability to pay. In addition, the State argued that Sanders was aware of his child support obligation, yet failed to make payments regardless of whether he was incarcerated.

The jury found Sanders guilty of felony nonsupport. The district court sentenced Sanders to imprisonment in the Nevada State Prison for a maximum of thirty-six months with a minimum parole eligibility of twelve months, but suspended the sentence and placed Sanders on probation for three years.

## DISCUSSION

### Constitutionality of NRS 201.051

Sanders argues that the "without good cause" language in NRS 201.051 is vague, thereby making the affirmative defense statute unconstitutional.

This court reviews the constitutionality of statutes de novo.[1] The burden is on the challenger to make a clear showing of the unconstitutionality of a statute.[2] When challenging a statute based on vagueness, the challenger must prove that the statute is "so imprecise, and vagueness so permeates its text, that persons of ordinary intelligence cannot understand what conduct is prohibited, and the enactment authorizes or encourages arbitrary and discriminatory enforcement."[3]

At the outset, we note that vagueness challenges are not generally raised when a statutory affirmative defense is at issue, given that such provisions do not delineate the boundaries of unlawful conduct, nor do they generally encourage arbitrary enforcement. Indeed, it has been acknowledged that " 'where the statute deals not with a proscription itself but, instead, with affirmative defenses, statutory provisions which become relevant only after an arrest is made and charges are filed, any uncertainty in its terms is far less likely to be an inducement to irresponsible law enforcement.' "[4]

---

[1]See Sheriff v. Burdg, 118 Nev. 853, 857, 59 P.3d 484, 486 (2002).

[2]Id.

[3]City of Las Vegas v. Dist. Ct., 118 Nev. 859, 863, 59 P.3d 477, 480 (2002).

[4]People v. Capitol News, Inc., 560 N.E.2d 303, 307 (Ill. 1990) (quoting People v. Illardo, 399 N.E.2d 59, 62 (N.Y. 1979)).

NRS 201.051 states in part:

>    1. Except as otherwise provided in this section, in a prosecution for a violation of NRS 201.020, the defendant may claim as an affirmative defense that he was unable to provide the child support or spousal support ordered by a court.
>
>    . . . .
>
>    8. For the purposes of this section, a defendant is not "unable to provide the child support or spousal support ordered by a court" if, during the period that the defendant was obligated to provide and failed to provide child support or spousal support, the defendant was:
>    (a) Voluntarily unemployed or underemployed without good cause or to avoid payment of child support or spousal support, including, without limitation, not using reasonable diligence to secure sufficient employment . . . .

Sanders argues that the "without good cause" language in NRS 201.051 is similar to the "without legal excuse" language that the Washington Supreme Court found void for vagueness in *State v. Richmond.*[5] In *Richmond,* the Washington Supreme Court observed that there was no statutory or case authority that specified and delimited the "lawful excuses" that constitute a defense to criminal nonsupport.[6] However, numerous courts have been critical of the *Richmond* decision.[7] In these cases, the courts have concluded that "without lawful excuse" is not vague since the phrase is well understood.[8]

We agree with those courts that have concluded that "without lawful excuse" is not vague. A person of ordinary intelligence can easily understand what constitutes "without good cause," as the phrase is well understood. Moreover, because NRS 201.051 is an affirmative defense statute, it does not encourage arbitrary or dis-

[5]683 P.2d 1093, 1096 (Wash. 1984).

[6]*Id.*

[7]*See Taylor v. State,* 710 P.2d 1019, 1023 (Alaska Ct. App. 1985) (concluding that the phrase "without lawful excuse" provides sufficient notice of prohibited conduct); *State v. Kirkland,* 837 P.2d 846, 851 (Kan. Ct. App. 1992) (concluding that the phrase "without lawful excuse" is not unconstitutionally vague and indefinite); *State v. Timmons,* 706 P.2d 1018, 1019 (Or. Ct. App. 1985) ("Like one of the reluctant concurring judges in *Richmond,* we find it difficult to believe that the phrase 'without lawful excuse' confuses or misleads defendants to the slightest degree as to their duty to support their minor children . . . .").

[8]*See* cases cited *supra* note 7.

criminatory enforcement. Accordingly, we hold that NRS 201.051 is constitutional.

## Scope and validity of NRS 201.020

Next, Sanders argues that the State misinterpreted NRS 201.020, thereby miscalculating his arrearages. The State maintains that once the district court initially ordered Sanders to pay child support, all arrearages, including those reduced to judgment, may be considered in determining eligibility for criminal prosecution under NRS 201.020. Essentially, the parties dispute whether the statute contemplates that arrearages that are reduced to judgment should be included when determining whether arrearages have exceeded the $10,000 threshold in NRS 201.020.

The meaning of a statute is a question of law that this court reviews de novo.[9] This court interprets statutes based on their plain meaning, which is intended to reflect legislative intent.[10]

NRS 201.020(2)(a) provides that a person who knowingly fails to provide for the support of his minor child is guilty of a felony if his arrearages for nonpayment of the court-ordered child support total $10,000 or more and have accrued over any period since the date that a court first ordered the defendant to provide for such support.

The plain language of the statute is clear. We therefore hold that any arrearages reduced to judgment are properly included in the calculation of the $10,000 threshold set forth in NRS 201.020 because arrearages originate from and are ''directly and exclusively correlative to the court-ordered obligation to pay support.''[11] As a result, there does not have to be an additional accrual of $10,000 in arrearages from the time an arrearage order is entered. Instead, an obligor can be charged with felony nonsupport as soon as his or her arrearages exceed $10,000, even if that amount includes arrearages reduced to judgment.

In this instance, the court ordered Sanders to pay $9,475 in arrearages plus $510 per month for child support on June 30, 1998. Thus, after just two months of nonpayment, Sanders' arrearages exceeded $10,000. Moreover, notwithstanding the $9,475 in arrearages reduced to judgment, Sanders accumulated arrearages in excess of $10,000 by failing to make a single child support payment from July 1998 to April 2001. Accordingly, we conclude that the State properly charged Sanders with violating NRS 201.020.

---

[9]*State v. Allen,* 118 Nev. 842, 847, 60 P.3d 475, 478 (2002).

[10]*Washington v. State,* 117 Nev. 735, 738-39, 30 P.3d 1134, 1136 (2001).

[11]*State v. Lenz,* 602 N.W.2d 173, 175-76 (Wis. Ct. App. 1999).

*Sufficiency of the evidence*

Finally, Sanders argues that insufficient evidence supports his conviction, given that he did not have significant ability or opportunity to pay child support while incarcerated.

We first address whether incarceration can be asserted as an affirmative defense pursuant to NRS 201.051. We next address whether sufficient evidence supports Sanders' conviction, given that the jury held him liable for arrearages that accrued while he was incarcerated. We hold that incarceration can be asserted as an affirmative defense under NRS 201.051; however, we conclude that sufficient evidence supports the jury's verdict.[12]

NRS 201.051 allows a defendant charged with felony nonsupport to claim that he was unable to provide court-ordered child support. However, NRS 201.051(8)(a) clarifies that a defendant cannot assert the affirmative defense if he was voluntarily unemployed or underemployed without good cause or to avoid payment of child support.

Many courts have confronted the issue of whether an obligor should be relieved of paying child support because he or she is incarcerated. Although the cases involve civil matters, they have equal application to the criminal nonsupport statute at issue here. While some courts have held that any criminal act is voluntary, and thus, an incarcerated individual is not entitled to modification of a child support obligation,[13] others have held that incarceration is a factor that can be considered.[14]

We agree with those courts that take incarceration into account when determining whether an individual is excused from paying

---

[12]*See Jackson v. State,* 117 Nev. 116, 122, 17 P.3d 998, 1002 (2001) (observing that this court must determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution' " (quoting *Domingues v. State,* 112 Nev. 683, 693, 917 P.2d 1364, 1371 (1996))).

[13]*See Richardson v. Ballard,* 681 N.E.2d 507, 508 (Ohio Ct. App. 1996) (concluding that incarceration due to criminal conduct is voluntary thereby not justifying a modification of a child support order); *Com. ex rel. Marshall v. Marshall,* 15 S.W.3d 396, 401 (Ky. Ct. App. 2000) (concluding that incarceration is a result of a voluntary act and will not excuse a child support obligation).

[14]*See Nab v. Nab,* 757 P.2d 1231, 1238 (Idaho Ct. App. 1988) (agreeing that " '[w]here a noncustodial parent is imprisoned for a crime other than nonsupport . . . the parent is not liable for such payments while incarcerated *unless* it is affirmatively shown that he or she has income or assets to make such payments.' " (quoting *Edmonds v. Edmonds,* 633 P.2d 4, 5 (Or. Ct. App. 1981))); *Johnson v. O'Neill,* 461 N.W.2d 507, 508 (Minn. Ct. App. 1990) ("Intention to commit a crime does not automatically translate into intention to limit income.").

child support. Accordingly, we hold that a jury can consider whether incarceration is a valid affirmative defense under the circumstances. In making this determination, the jury should weigh factors such as whether the obligor has other assets or income, the obligor's past and future ability to earn income, the length of the obligor's incarceration, and the best interest of the child.[15]

■■■■■

In this instance, we conclude that sufficient evidence supports Sanders' conviction because it was within the jury's discretion to reject Sanders' affirmative defense. Sanders had arrearages of $9,475 when the district court ordered him to pay those arrearages plus $510 per month for child support. He knew of his child support obligation prior to entering prison and never made a payment, illustrating that he never made a meaningful attempt to support his children regardless of his incarceration.

## CONCLUSION

We hold that NRS 201.051 is not vague because an ordinary person can easily understand what constitutes "without good cause," and the affirmative defense statute does not lend itself to arbitrary enforcement. Also, we hold that NRS 201.020 is not ambiguous. And we conclude that the State did not misinterpret NRS 201.020 when it charged Sanders with felony nonsupport. Although we hold that incarceration can be asserted as an affirmative defense under NRS 201.051, we conclude that sufficient evidence supports Sanders' conviction because the jury had good reason to reject Sanders' affirmative defense of incarceration.

Accordingly, we conclude that Sanders' conviction was supported by sufficient evidence and affirm his judgment of conviction.[16]

---

[15]See Halliwell v. Halliwell, 741 A.2d 638, 645 (N.J. Super. Ct. App. Div. 1999).

[16]Sanders also argues that the information did not charge him with a "willful" violation of the law, thereby requiring reversal. However, we conclude that this argument lacks merit, given that NRS 201.020 no longer uses the term "willful."