OPINION
 

 By the Court,
 

 Douglas, J.:
 

 In this appeal, we consider whether the placement of interest earned on condemnation funds, which were deposited with the court in an eminent domain action, into a local government’s general fund for public benefit, pursuant to statute, constituted a taking under the Fifth and Fourteenth Amendments to the United States Constitution.
 

 We conclude that, because condemnation deposits constitute private property to the extent that a party is entitled to the condemnation deposit, the party is likewise entitled to the interest earned on that deposit. Thus, if interest earned from the condemnation deposit is placed into a local government’s general fund for public benefit, that act constitutes a taking under the Fifth and Fourteenth Amendments. Accordingly, any statute allowing local governments to keep interest earned on funds deposited with the court is unconstitutional, as applied to condemnation deposits that are ultimately awarded to a private party.
 

 Accordingly, because the condemnees in this appeal were entitled to the deposited amount, we reverse the district court’s order determining that the condemnees were not entitled to the interest earned on the condemnation deposit, and we remand this matter to
 
 *510
 
 the district court so that the district court may determine the amount of interest owed to the condemnees on the condemnation deposit.
 

 FACTS AND PROCEDURAL HISTORY
 

 The instant matter arose from an action in eminent domain, wherein the City of Las Vegas Redevelopment Agency sought to condemn real property belonging to appellants Paul and Laurel Moldon, in April 1995. As part of the Redevelopment Agency’s action, the district court granted the Redevelopment Agency immediate occupancy and possession of the property; the Redevelopment Agency as a result deposited $725,000, as the estimated value of the Moldons’ property, with the district court clerk.
 
 [2]
 

 After several years of proceedings, including an appeal and remand,
 
 [3]
 
 a jury valued the Moldons’ real property, as of April 1995, at $1,570,000. Thereafter, the Moldons and the Redevelopment Agency entered into a settlement agreement, under which the Moldons were entitled to the full amount of the condemnation deposit, among other things. As a result, in November 2005, the Moldons requested an order directing the district court clerk to pay to them the principal of the $750,000 condemnation deposit, along with the interest earned on that deposit. Respondent Clark County opposed their request, in part, arguing that the interest belonged to the County in accordance with NRS 355.210, which directed that interest earned on money deposited with the court be placed in the applicable local government’s general fund.
 

 Ultimately, the district court denied the Moldons’ request as to the interest that had accrued. After the district court certified its order as final under NRCP 54(b), the Moldons appealed.
 

 DISCUSSION
 

 On appeal, the Moldons argue that former NRS 355.210 was unconstitutional because it impermissibly allowed local governments to use private monies deposited with the court for public benefit, by retaining the interest earned from the deposits for local government use. Here, the Moldons contend that this statutorily mandated act constituted an impermissible taking under the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, because it allowed Clark County to keep the interest earned on the condemnation deposit, to which the Moldons were entitled. We agree.
 

 
 *511
 
 Whether a taking has occurred is a question of law that we review de novo.
 
 [4]
 
 Additionally, a statute’s constitutionality is also a question of law that we review de novo.
 
 [5]
 
 We presume that statutes are valid, and the person challenging that presumption bears the burden of showing that the statute is unconstitutional.
 
 [6]
 
 To meet that burden, “the challenger must make a clear showing of invalidity.”
 
 [7]
 

 Before its amendment in 2007, NRS 355.210 in pertinent part provided
 

 1. When any money has been deposited in any court pursuant to law or rule of court, and when in the judgment of the clerk of the court, or the judge thereof if there is no clerk, payment out of the deposit will not be required for 90 days or more, the clerk or the judge, as the case may be, may invest the money so deposited, either alone or by commingling it with other money deposited.
 

 2. The investment may be made:
 

 (a) By deposit at interest in a state or national bank or credit union in the State of Nevada; or
 

 (b) In bills, bonds, debentures, notes or other securities whose purchase by a board of county commissioners is authorized by NRS 355.170.
 
 [8]
 

 3. The interest earned from any investment of money pursuant to this section shall be deposited to the credit of the general fund of the political subdivision or municipality which supports the court.
 
 [9]
 

 Thus, this statute required that all interest earned on funds deposited with the courts be applied to local government accounts. But, the Moldons argue that under the United States Supreme Court’s decision in
 
 Webb’s Fabulous Pharmacies, Inc. v. Beck-
 
 
 *512
 

 with,
 

 [10]
 

 the interest earned on the condemnation deposit could not be placed into Clark County’s general fund under NRS 355.210 without violating the Fifth and Fourteenth Amendments.
 

 In
 
 Webb’s,
 
 the United States Supreme Court concluded that a county’s use of interpleaded funds for public benefit, realized by retaining interest earned on the funds while they were in the registry of the court, constituted a taking in violation of the Fifth and Fourteenth Amendments, which prohibit a state from taking private property for public use without just compensation.
 
 [11]
 
 The Supreme Court concluded that the county’s act of keeping the interest earned on interpleaded funds qualified as a Fifth Amendment Takings Clause violation for two reasons. First, the county was not justified in retaining the interest as a service fee because the court clerk was allowed to collect fees for its services under a separate and distinct state statute.
 
 [12]
 
 Second, the Court concluded that the Takings Clause was violated because the deposited funds were concededly private and because their deposit in the court’s registry was required by state statute.
 
 [13]
 

 Clark County argues that the Moldons’ reliance on
 
 Webb’s
 
 is in-apposite because unlike in
 
 Webb’s,
 
 the district court clerk here received no additional fees for handling the condemnation deposit; it contends that the interest earned on the condemnation deposit was justified as the sole “fee” imposed. Thus, Clark County argues that it did not exact two tolls upon the Moldons when it transferred the interest earned from the condemnation deposit into its general fund.
 

 
 *513
 
 We conclude that, under NRS 19.013,
 
 [14]
 
 the district court clerk was paid in full for all rendered services and that a decade’s worth of interest on $725,000 would bear little, if any, relation to the effort required to hold the condemnation deposit in interest-bearing accounts. Thus, the district court clerk’s actions of placing the interest earned on the condemnation deposit into Clark County’s general fund cannot be viewed as merely a fee for services rendered.
 

 Nonetheless, Clark County argues that because the Moldons made the “strategic choice” to leave the condemnation deposit in the district court’s trust account, instead of transferring the funds into a separate account, the Court’s holding in
 
 Webb’s
 
 is inapplicable. Consequently, Clark County argues that its retention of the interest earned on the condemnation deposit did not violate the Fifth and Fourteenth Amendments and that former NRS 355.210 was not unconstitutional.
 

 We conclude, however, that the Moldons’ argument that an unconstitutional taking occurred when Clark County retained the interest earned on the condemnation deposit has merit. In
 
 McCarran International Airport v. Sisolak,
 
 we recognized that “[a]n individual must have a property interest in order to support a takings claim” and that “the court must first determine ‘whether the plaintiff possesses a valid interest in the property affected by the governmental action’ . . . before proceeding to determine whether the governmental action at issue constituted a taking.”
 
 [15]
 
 The term “property” includes all rights inherent to ownership, including those to possess, use, and enjoy the property.
 
 [16]
 

 Thus, under
 
 Sisolak,
 
 we must first determine whether the Moldons had a property interest in the condemnation deposit in order to ascertain whether the use of the funds to earn interest later placed into Clark County’s general fund constituted a taking.
 
 [17]
 
 We conclude that the Moldons had such an interest; the condemnation
 
 *514
 
 deposit was placed with the district court clerk in anticipation that the district court would determine that at least a portion, if not all, of the funds belonged to the Moldons. Notwithstanding a waiver of all defenses in the eminent domain action, except those relating to the amount of compensation, the Moldons had the ability, with the court’s permission, to withdraw the condemnation deposit during the pendency of the eminent domain action under former NRS 37.100(4).
 
 [18]
 
 Further, the Moldons were ultimately granted the right to possess and control the whole amount of the condemnation deposit under their settlement agreement with the Redevelopment Agency. Accordingly, we conclude that the Moldons had a protected property interest in the condemnation deposit. Because the Moldons had a property interest in the condemnation deposit, it follows that they had a right to the interest generated by that principal.
 
 [19]
 

 As such, we now determine whether NRS 355.210 regulated the Moldons’ property so as to constitute a taking as to the interest earned on the condemnation deposit. Because the Moldons were deprived of the interest earned on the condemnation deposit, which belonged to them, we conclude that the district court clerk’s act of placing the interest earned from the condemnation deposit into Clark County’s general fund constituted a per se taking in violation of the Fifth and Fourteenth Amendments.
 
 [20]
 

 
 *515
 
 Accordingly, we conclude that former NRS 355.210 was unconstitutionally applied to allow Clark County to take the Moldons’ earned interest without just compensation. Thus, the district court clerk’s act of placing the interest earned on the condemnation deposit into Clark County’s general fund constituted a taking without just compensation, and it impermissibly allowed Clark County to unduly burden the Moldons to single-handedly benefit the public as a whole.
 
 [21]
 

 The record shows that the district court determined that the Moldons were not entitled to the interest earned on the condemnation deposit because the Moldons had failed to seek an order to transfer the condemnation deposit into a blocked account. We conclude that this basis for refusal was groundless because, even though NRS 355.210(1) allowed the district court to invest the condemnation deposit into a separate or commingled account, NRS 355.210(3) mandated the district court clerk to credit the interest earned on either account into Clark County’s general fund. As a result, requesting the district court clerk to transfer the condemnation deposit into a separate account would not, in and of itself, have allowed the Moldons to keep the interest earned on the condemnation deposit under NRS 355.210; such a request would have been futile.
 
 [22]
 

 
 *516
 
 Therefore, we conclude that there was a Takings Clause violation when the district court clerk allowed interest earned from the condemnation deposit to remain in Clark County’s general fund without justly compensating the Moldons; the interest earned on the Moldons’ condemnation deposit in Clark County’s general fund under former NRS 355.210 constituted an unconstitutional taking.
 
 [23]
 

 CONCLUSION
 

 The Moldons are entitled to the interest earned on the condemnation deposit because they had a property interest in the condemnation deposit. The district court clerk’s act of placing the interest earned from the condemnation deposit into Clark County’s general fond caused a taking in violation of the Fifth and Fourteenth Amendments. Consequently, former NRS 355.210 was unconstitutionally applied to allow such takings.
 

 Accordingly, we reverse the district court’s order providing that the Moldons were not entitled to the interest earned on the condemnation deposit, and we remand this matter to the district court so that the district court may determine the amount of interest owed to the Moldons on the condemnation deposit.
 

 Gibbons, C. J., Maupin, Hardesty and Cherry, JJ., and Agosti, Sr. J., concur.
 

 [2]
 

 During argument before the district court, Clark County had indicated that the deposited funds had been placed into an interest-bearing account for Clark County, which was not for the benefit of the Moldons.
 

 [3]
 

 See Las Vegas Downtown Redev.
 
 v.
 
 Crockett,
 
 117 Nev. 816, 34 P.3d 553 (2001).
 

 [4]
 

 McCarran Int'l Airport v. Sisolak,
 
 122 Nev. 645, 661, 137 P.3d 1110, 1121 (2006).
 

 [5]
 

 Nevadans for Nevada v. Beers,
 
 122 Nev. 930, 939, 142 P.3d 339, 345 (2006) (citing
 
 Sheriff v. Burdg,
 
 118 Nev. 853, 857, 59 P.3d 484, 486 (2002)).
 

 [6]
 

 Id.
 

 [7]
 

 Id.
 

 [8]
 

 8 NRS 355.170 provides the types of securities that a local government may purchase as investments, and it further provides that any interest earned from the investments made under this statute may “be credited to the fund from which the principal was taken or to the general fund of the local government.” NRS 355.170(5).
 

 [9]
 

 Since its amendment in 2007, NRS 355.210(4) in pertinent part provides that “[e]xcept as otherwise provided in NRS 37.280, the interest earned from any investment of money pursuant to this section must be deposited to the credit of the general fund of the political subdivision or municipality which supports the court.’ ’
 

 
 *512
 
 Since its amendment in 2007, NRS 37.280, which is under the eminent domain chapter, provides in pertinent part that:
 

 1. If the amount of the compensation awarded upon final judgment, not including any interest upon the judgment, is equal to or greater than the amount of money deposited in the court, the defendant [condemnee] is entitled to receive all the interest earned.
 

 2. If the amount of the compensation awarded upon final judgment, not including any interest upon the judgment, is less than the amount of money deposited in the court:
 

 (a) The defendant [condemnee] is entitled to receive a percentage of the interest earned that represents the amount of money deposited in the court as compared to the amount of the compensation awarded upon final judgment, not including any interest upon the judgment.
 

 [10]
 

 449 U.S. 155 (1980).
 

 [11]
 

 Id.
 
 at 164-65.
 

 [12]
 

 Id.
 
 at 159-60.
 

 [13]
 

 Id.
 
 at 164-65;
 
 see also Phillips
 
 v.
 
 Washington Legal Foundation,
 
 524 U.S. 156, 172 (1998) (holding that under Texas law, interest income generated by funds held in interest on lawyers trust accounts (IOLTA) is the private property of the owner of the principal for purposes of the Takings Clause);
 
 Brown
 
 v.
 
 Legal Foundation of Wash.,
 
 538 U.S. 216, 232 (2003) (holding that the State of Washington’s use of IOLTA to pay for legal services that were provided to the needy qualified as a “public use,” as required for exercise of the state’s authority to confiscate private property under the Takings Clause).
 

 [14]
 

 Before its amendment in 2007, NRS 19.013(1) provided a schedule of all of the fees that a county clerk was required to collect, unless otherwise provided by a specific statute. Further, NRS 19.013(3) provided in pertinent part that “[t]he fees set forth in subsection 1 are payment
 
 in full for all services rendered by the county clerk
 
 in the case for which the fees are paid, including the preparation of the judgment roll, but the fees do not include payment for typing, copying, certifying or exemplifying or authenticating copies” (emphasis added).
 

 [15]
 

 122 Nev. 645, 658, 137 P.3d 1110, 1119 (2006) (quoting
 
 Karuk Tribe of California
 
 v.
 
 Ammon,
 
 209 F.3d 1366, 1374 (Fed. Cir. 2000)).
 

 [16]
 

 122 Nev. at 658, 137 P.3d at 1119 (citing
 
 Black’s Law Dictionary
 
 1252 (8th ed. 2004)).
 

 [17]
 

 See
 
 122 Nev. at 658, 137 P.3d at 1119.
 

 [18]
 

 Prior to its amendment in 2007, NRS 37.100(4) provided:
 

 In lieu of a bond the plaintiff, with the consent of the court, may deposit with the clerk of the court a sum equal to the value of the premises plus damages, as appraised by the plaintiff. Upon application of the defendant and upon notice to all parties, the court or judge may order the money deposited with the clerk of the court or any part thereof to be paid to the defendant. If the amount of the compensation awarded upon judgment is less than the sum deposited and paid to the defendant, the court shall enter judgment in favor of the plaintiff and against the defendant for the amount of the excess. Application by the defendant to the court for withdrawal of part or all of the money deposited and the payment of that money to the defendant does not prejudice the right of the defendant to contest the amount of compensation to be finally awarded. The receipt by the defendant of a part or all of the money deposited must be conditioned upon the waiver of all defenses except those relating to the amount of compensation.
 

 The aforementioned provision is now codified in NRS 37.100(6).
 

 [19]
 

 See Webb’s Fabulous Pharmacies, Inc. v. Beckwith,
 
 449 U.S. 155, 162 (1980) (stating that “[t]he usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal”).
 

 [20]
 

 See Brown v. Legal Foundation of Wash.,
 
 538 U.S. 216, 233-35 (2003) (recognizing that a per se taking approach is appropriate in these types of cases).
 

 [21]
 

 See Webb’s,
 
 449 U.S. at 164-65;
 
 Penn Central Transp. Co. v. New York City,
 
 438 U.S. 104, 123 (1978) (stating that the “ ‘Fifth Amendment’s guarantee . . . [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole’ ” (quoting
 
 Armstrong v. United States,
 
 364 U.S. 40, 49 (1960)));
 
 see also Morton Grove Park Dist. v. American Nat.,
 
 399 N.E.2d 1295, 1299 (Ill. 1980) (holding that the use of condemnation award money by the county treasurer to earn interest, which was not paid to the condemnee but to the county, was a taking of private property for public use);
 
 Tellis v. Godinez,
 
 5 F.3d 1314, 1316-17 (9th Cir. 1993) (holding that a Nevada statute providing that interest and income earned on money in prisoners’ personal property fund “must be credited to the fund,” created a protected property right in the interest and income actually earned on the money deposited in the fund and that the failure to credit the inmate’s account with the interest earned on his funds violated the Takings Clause);
 
 cf. Washlefske v. Winston,
 
 234 F.3d 179, 184-85 (4th Cir. 2000) (holding that under traditional rules of property law in Virginia, an inmate has no property interest in any wages from his work in prison insofar as the State may elect through a statute to give him rights; “[w]hile it is true that at common law interest follows principal, it does so only ‘as a property right incident to the ownership of the underlying principal.’ ” (citation omitted)).
 

 [22]
 

 While Clark County argues that the Moldons could have stipulated with the district court clerk to invest the condemnation deposit in a separate interest-bearing account, we conclude that this argument is without merit. It is
 
 *516
 
 speculative that the district court clerk would have stipulated with the Moldons to place the money in a separate account and to “opt out” of the mandate prescribed in NRS 355.210(3).
 

 [23]
 

 The record reveals that the district court’s decision to deny the Moldons’ application for interest earned on the condemnation deposit was based in part on the Moldons’ failure to serve the Attorney General under NRS 30.130 with notice of their constitutional challenge to NRS 355.210. In pertinent part, NRS 30.130 provides that when declaratory relief is sought as to the validity of a statute, the Attorney General must be served with a copy of the proceedings. We conclude that the district court’s basis for denying the Moldons’ application for interest under NRS 30.130 was improper. The Moldons were not seeking declaratory relief with their application; they were merely seeking to recover the interest earned on the condemnation deposit.