AMY ADELE BUSEFINK, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 57579

October 4, 2012 286 P.3d 599

*Jones Vargas* and *Bradley Scott Schrager, Kevin R. Stolworthy,* and *Conor P. Flynn*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, *Robert E. Wieland*, Senior Deputy Attorney General, and *Jared M. Frost*, Deputy Attorney General, Carson City, for Respondent.

*Allen Lichtenstein*, Las Vegas; *Ropes & Gray LLP* and *David O. Stewart*, Washington, D.C., for Amicus Curiae Project Vote.

Before DOUGLAS, GIBBONS and PARRAGUIRRE, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we consider whether NRS 293.805's prohibition against providing compensation to voter registration canvassers based upon the total number of voters a canvasser registers violates the First Amendment to the United States Constitution and/or is unconstitutionally vague.[2] We conclude that NRS 293.805 neither violates the First Amendment nor is unconstitutionally vague, and therefore, we affirm the judgment of conviction.

### FACTS AND PROCEDURAL HISTORY

In 2008, the Association of Community Organizations for Reform Now, Inc. (ACORN), hired voter registration canvassers in Las Vegas. ACORN originally paid these canvassers an hourly wage. After considering ways to increase productivity, ACORN's field director for Nevada suggested to appellant Amy Busefink, his supervisor, the idea of paying incentive bonuses to voter registration canvassers. Busefink granted the director permission to implement the incentive program between August and September 2008. Under this program, ACORN would pay canvassers a $5 bonus if a canvasser returned 21 or more voter registration appli-

---

[2]NRS 293.805(1) provides:

    1. It is unlawful for a person to provide compensation for registering voters that is based upon:

      (a) The total number of voters a person registers; or

      (b) The total number of voters a person registers in a particular political party.

cations. ACORN's employees commonly referred to this program as "21" or "blackjack," after the card game. Through this program, several canvassers obtained a $5 bonus for submitting 21 or more voter registration applications.

During this time, the Secretary of State's office began investigating complaints it received regarding voter registration applications submitted by ACORN. A subsequent investigation by the Secretary of State's office uncovered the "blackjack" program. The State then charged Busefink, ACORN, and ACORN's field director for Nevada with several counts of violating NRS 293.805.

At Busefink's preliminary hearing, the State provided evidence demonstrating that ACORN paid multiple canvassers the "blackjack" bonus for submitting 21 or more voter registration applications. Further, the investigator for the Secretary of State's office testified that canvassers submitted fraudulent voter registration applications. The justice court found reasonable cause to conclude that Busefink committed violations of NRS 293.805 and bound her case over to the district court for trial. Busefink filed a motion to dismiss the amended criminal complaint, arguing that NRS 293.805 is unconstitutionally vague and violates the First Amendment. The district court denied the motion to dismiss. Busefink then entered an *Alford* plea to two counts of conspiracy to commit the crime of compensation for registration of voters, and was adjudged guilty. The district court sentenced Busefink to a year in the Clark County Detention Center and required her to pay a $2,000 fine for each of the two counts. The district court then suspended the sentence, placed Busefink on informal probation, and required her to complete 100 hours of community service.

Busefink now appeals. For the reasons set forth below, we conclude that (1) NRS 293.805 triggers a "less exacting" standard of review than strict scrutiny; (2) the State demonstrated an interest sufficiently weighty to justify the limitation imposed on canvassing activities, and therefore, NRS 293.805 does not violate the First Amendment; and (3) NRS 293.805 is not unconstitutionally vague. Accordingly, we affirm the judgment of conviction.

## DISCUSSION

### I. *NRS 293.805 does not violate the First Amendment*

The central issue in this case is whether NRS 293.805's prohibition on the payment of individuals based upon the number of voters registered violates the First Amendment. We review a constitutional challenge to a statute de novo. *Pohlabel v. State*, 128 Nev. 1, 4, 268 P.3d 1264, 1266 (2012). " 'Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute

is unconstitutional.'" *Flamingo Paradise Gaming v. Att'y General*, 125 Nev. 502, 509, 217 P.3d 546, 551 (2009) (quoting *Silvar v. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006)). The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The "freedom of speech" is a fundamental right and liberty that is secured to all persons against abridgment by a State through the Fourteenth Amendment's due process clause. *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940). "[T]he Free Speech Clause prohibits the State from significantly burdening potential speakers with financial disincentives to speak. . . . [C]ompensation often induces individuals to engage in expressive activities, [therefore] a governmental entity may not unreasonably impede the provision of compensation to individuals who wish to engage in such activities for pay." *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 162 (W.D. Pa. 2011) (internal citations omitted). To determine whether NRS 293.805 violates the First Amendment, we must (1) determine the applicable standard of review, and (2) apply that standard of review when weighing NRS 293.805's burdens on First Amendment rights and the State's interest in preventing fraud.

A. *NRS 293.805 triggers a "less exacting" standard of review than strict scrutiny*

"'[V]oting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). However, "[e]lection laws will invariably impose some burden upon . . . voters." *Id.* "Consequently, to subject every voting regulation to strict scrutiny . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id.* Accordingly, when reviewing the constitutionality of an election law, a "more flexible" and "less exacting" standard may apply. *Id.* at 434; *see Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Specifically, when determining whether a state election law violates First and Fourteenth Amendment rights, a court must "weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Election laws imposing "severe burdens" on First and Fourteenth Amendment rights are subject to strict scrutiny. *Id.* Where a state election law imposes a "lesser burden," that law is subject to a less exacting review, and a state's "'important regulatory interests' will usually be

enough to justify 'reasonable, nondiscriminatory restrictions.' "[3] *Id.* (quoting *Burdick*, 504 U.S. at 434).

In *Meyer v. Grant*, the United States Supreme Court categorized petition circulation as "core political speech," any limitation upon which shall be subject to "exacting scrutiny." 486 U.S. 414, 420-22 (1988). The Court held that a state constitutional amendment imposing a wholesale ban on compensating petition circulators violated the First Amendment by limiting the number of voices that would convey the petitioners' message, thereby limiting the size of the audience that the message will reach, and by making it less likely that the petitioners would obtain enough signatures to place the issue on the ballot. *Id.* at 423-24, 428. The Court noted that the state's interest in protecting the integrity of the initiative process did not justify the heavy burden that the constitutional amendment placed on such expressive speech. *Id.* at 426.

In interpreting *Meyer*, several courts subject statutes that ban payment of petition circulators on a per-signature basis to strict scrutiny. *See Idaho Coalition United for Bears v. Cenarrusa*, 234 F. Supp. 2d 1159, 1165 (D. Idaho 2001); *On Our Terms '97 PAC v. Secretary of State, Maine*, 101 F. Supp. 2d 19, 25-26 (D. Me. 1999); *Term Limits Leadership Council, Inc. v. Clark*, 984 F. Supp. 470, 473 (S.D. Miss. 1997); *LIMIT v. Maleng*, 874 F. Supp. 1138, 1140-41 (W.D. Wash. 1994). However, we disagree with this interpretation of *Meyer* where, as here, the statute at issue places restrictions on the payment of voter registration canvassers rather than petition circulators.

In *Meyer*, the Court concluded that the statute at issue placed a heavy burden on speech because it restricted the number of persons an organization could get to circulate petitions and made it less likely that the organization's initiative would get on the ballot. 486 U.S. at 422-23. Because NRS 293.805 deals with restrictions

---

[3]We note that courts "apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994). NRS 293.805 does not prohibit payment of canvassers for all reasons; rather, it prohibits payment based upon the total number of persons registered or registered to a particular political party. *See* NRS 293.805(1). The Legislature enacted NRS 293.805 in order to prevent fraudulent voter-registration applications. *See* Hearing on S.B. 250 Before the Senate Government Affairs Comm., 67th Leg. (Nev., March 26, 1993). This restriction does not prohibit payment based on the content of an individual's speech; rather, it prohibits payment based on the procurement of a voter-registration application. *See* NRS 293.805. Thus, we conclude that this statute is content-neutral. *See Project Vote v. Kelly*, 805 F. Supp. 2d 152, 172 (W.D. Pa. 2011) (finding a statute content-neutral where the statute prohibited payment to persons who register voters based on the number of registrations or applications obtained).

on the payment of those who register voters, the restriction regarding an initiative not getting on the ballot is inapplicable. *See id.* Thus, the burden on speech caused by a restriction on the payment of those who register voters is less severe than the burden caused by statutes that restrict the payment of petition circulators. Further, unlike the statute at issue in *Meyer*, NRS 293.805 does not enact a wholesale ban on compensating voter registration canvassers. *See* NRS 293.805. Rather, NRS 293.805 prohibits payment of those who register voters based upon the number of persons registered. *Id.*

NRS 293.805's restrictions are similar to those found in the ballot measure at issue in *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006). In *Prete*, the Ninth Circuit Court of Appeals held that a ballot measure that prohibited the payment of petition circulators on a per-signature basis did not severely burden First Amendment rights because it left open other avenues of payment and did not reduce the number of signatures obtained. *Id.* at 970-71. Similarly, NRS 293.805's restrictions leave open other avenues of payment and only prohibit payment based upon the number of persons one registers.

Further, in *Kelly*, the court found that a statute prohibiting payment of voter registration canvassers based upon the number of registrants obtained did not severely burden First Amendment rights. 805 F. Supp. 2d at 172-74. Thus, that court analyzed the statute under a "less exacting" standard of review. *Id.* We find that court's reasoning applicable here. Accordingly, because NRS 293.805 does not place a severe burden on First Amendment rights, we consider the validity of NRS 293.805 pursuant to a "less exacting" standard of review.

B. *The State's interest in preserving the integrity of Nevada's election process justifies NRS 293.805's restrictions*

"Constitutional challenges to specific provisions of a State's election laws . . . cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Instead, we

> must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). In applying a "less exacting" standard of review, a "State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons*, 520 U.S. at 358 (quoting *Burdick*, 504 U.S. at 434).

### 1. *The injury to voter-registration activities resulting from NRS 293.805 is minimal*

Although NRS 293.805 prohibits payment based upon the number of persons that an individual registers to vote, there are other payment methods available. Thus, NRS 293.805 does not impose the same restrictions that the Sixth Circuit Court of Appeals found overly burdensome in *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 385-86 (6th Cir. 2008) (allowing only one method of paying voter registration canvassers). As noted above, unlike cases involving restrictions on the payment of petition canvassers, restrictions on the payment of those who register voters cause a lesser burden. *See Meyer*, 486 U.S. at 422-24. Finally, the prohibition of payment based upon the amount of registrations obtained does not inhibit an organization's ability to hire people to canvass for voter registrations, as other payment methods are available. *See Kelly*, 805 F. Supp. 2d at 173-74 (following similar reasoning in upholding a Pennsylvania statute that prohibited per-signature payment of those who register voters); *see, e.g., Prete*, 438 F.3d at 963. Because the statute's restriction on per-application and per-party payment of canvassers is narrow and an organization still has the ability to hire and pay voter registration canvassers, we conclude that NRS 293.805 does not result in a significant injury to First Amendment rights.

### 2. *The State has an important regulatory interest in preventing fraud*

We look to the actions of other jurisdictions, NRS 293.805's legislative history, and the evidence in this case to determine the State's interest. We note that the United States Supreme Court has recognized that states can " 'justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether.'" *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)). Several jurisdictions recognize that commission-based compensation programs create an incentive to commit fraud. *Prete*, 438 F.3d at 969; *Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614, 617-18 (8th Cir. 2001). These decisions recognize that a state has an important interest in preventing fraud. *Prete*, 438 F.3d at 969; *Initiative & Referendum Institute*, 241 F.3d at 617-18.

In 1992, the Las Vegas Metropolitan Police Department set up a special task force to investigate election fraud. Hearing on S.B. 250 Before the Senate Government Affairs Comm., 67th Leg. (Nev., March 26, 1993). During the investigation, the police discovered that a political party paid canvassers $2 for every voter registered with that party. *Id.* A police detective testified that this led to canvassers submitting fraudulent voter registration applications. *Id.* As a result, the Legislature enacted NRS 293.805 in an attempt to curb the incentive to commit voter-registration fraud. In this case, the investigator for the Secretary of State testified at the preliminary hearing that ACORN submitted fraudulent voter registration applications. Although the State did not prosecute anyone in connection to the fraudulent voter registration applications, this evidence demonstrates that the possibility of fraud is real. Thus, given the actions of other jurisdictions, NRS 293.805's legislative history, and the testimony during the preliminary hearing, we conclude that Nevada has an important regulatory interest in preventing voter-registration fraud.

### 3. *The State's interest in preventing fraud justifies NRS 293.805's minimal burden on First Amendment rights*

A state's interest need only be " 'sufficiently weighty to justify the limitation' imposed on canvassing activities." *Kelly*, 805 F. Supp. 2d at 186 (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)). In every decision examined by this court in which a court applied "less exacting" scrutiny to a statute prohibiting payment of canvassers on a per-signature basis, the courts determined the statute was constitutional. *See, e.g., Person v. New York State Bd of Elections*, 467 F.3d 141, 143 (2d Cir. 2006); *Prete*, 438 F.3d at 963-71; *Initiative & Referendum Institute*, 241 F.3d at 617-18; *Kelly*, 805 F. Supp. 2d at 187.

Under NRS 293.805, other payment options are available, the harm caused by the restrictions imposed is not significant, and organizations still have the ability to hire individuals to canvass. This minimal burden on First Amendment rights is reasonable in light of the State's interest in preventing voter registration fraud. The State's interest is sufficiently weighty to justify NRS 293.805's limitation on the payment of canvassers. Accordingly, NRS 293.805 does not violate the First Amendment.

## II. *NRS 293.805 is not unconstitutionally vague*

Busefink argues that the word "register[ ]" as used in NRS 293.805 is impermissibly vague and does not cover the voter registration canvassers' conduct here. We disagree.

The " '[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause[s] of the Fifth' and Fourteenth Amendments to the United States Constitution." *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 553 (2010) (second alteration in original) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). This court has held that "[v]agueness may invalidate a criminal law . . . (1) if [the statute] 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.' " *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010)). "Enough clarity to defeat a vagueness challenge may be supplied by judicial gloss on an otherwise uncertain statute, by giving a statute's words their well settled and ordinarily understood meaning, and by looking to the common law definitions of the related term or offense." *Id.* at 483, 245 P.3d at 553-54 (citations omitted). Further, " 'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' " *Id.* at 481, 245 P.3d at 552 (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).

The term "register" as used in NRS 293.805 is not vague. The common dictionary definition of the term "register" is "[t]o enroll formally or officially." *Webster's II New College Dictionary* 955 (3d ed. 2005); *see Black's Law Dictionary* 1396 (9th ed. 2009) (defining "register" as "[t]o enroll formally"). Handing out registration applications, helping individuals fill out registration applications, and submitting voter registration applications fits this definition of register. If we were to adopt the narrow interpretation of the term "register" to not include the actions of canvassers helping individuals fill out registration applications and submitting them, it would be contrary to the definition above and the legislative intent in enacting this statute. In enacting NRS 293.805, the Legislature intended to curb voter registration fraud by precluding payment of those who register voters based upon the number of persons registered. *See* Hearing on S.B. 250 Before the Senate Government Affairs Comm., 67th Leg. (Nev., March 26, 1993). If we were to interpret the term "register" as not covering the conduct here, it would be contrary to the Legislature's intent. Given the definition of register above, a person of ordinary intelligence would understand the term "register," as used in NRS 293.805, to encompass the voter registration canvassers' conduct in this case.

Busefink relies on the Secretary of State's recent proposal to amend the statute as evidence that the statute is vague and does not

clearly apply to private voter registration efforts.[4] However, the Secretary's proposal does not demonstrate that the term "register" is vague. Rather, the Secretary's proposal would have provided greater clarity to a statute that was already clear. Accordingly, we conclude that the term "register" as used in NRS 293.805 is not unconstitutionally vague.

Busefink also argues that the term "based upon," as used in NRS 293.805, is unconstitutionally vague. She argues that the term could mean that the statute bars compensation based upon any consideration of the number of persons one registers or compensation where the sole basis for determining compensation is the number of persons one registers. The term "based upon" in NRS 293.805 is not unconstitutionally vague. In *Kelly*, the court dealt with the issue of what "based upon" meant in a similar statute. 805 F. Supp. 2d at 169. The court found that the term prohibited commission payments—*e.g.*, compensation determined by the number of registrations obtained—but that the term did not preclude productivity goals and termination based on failure to meet productivity goals. *Id.* A plain reading of NRS 293.805 provides an understanding that an employer cannot use the amount of registrations obtained as a factor in determining pay. Accordingly, we conclude that the term "based upon" in NRS 293.805 is not vague.

Busefink also contends that NRS 293.805 lacks an intent requirement, and thus, the statute is unconstitutionally vague. NRS 293.805 does not outline an intent element. However, the State contends that this court should read NRS 293.805 to incorporate a general intent requirement pursuant to NRS 193.190, which provides that "[i]n every crime or public offense there must exist a union, or joint operation of act and intention, or criminal negligence." In *Sheriff v. Burdg*, 118 Nev. 853, 858, 59 P.3d 484, 487 (2002), we held that NRS 193.190 did not alleviate the lack of an intent element in a statute that prohibited possessing a majority of ingredients required to make a controlled substance other than marijuana because it was not clear where the court would imply in-

---

[4]The text of the proposed amendment to NRS Chapter 293 stated:

An organizer of voter registration: . . .

 (c) [m]ay employ persons to assist the organizer of voter registration in registering voters in the State. The organizer of voter registration shall not provide compensation to any person hired pursuant to this paragraph that is based on the number of completed applications to register to vote that the person submits.

A.B. 82, 75th Leg. (Nev. 2009) (the Legislature did not enact this proposed legislation).

tent. *Id.* This court noted that the statute did not provide a person of ordinary intelligence with fair notice of what conduct the statute prohibited. *Id.* Here, the statute prohibits the payment of an individual based upon the number of voters registered. Given the nature of this prohibition and that this prohibition is clearly articulated by the statute, we conclude that NRS 293.805 provides adequate notice of what conduct is prohibited. Thus, unlike *Burdg*, a person who violates NRS 293.805 would know that they are violating the statute. *See id.* Further, a plain reading of the statute demonstrates that the intent would apply to the payment of workers based upon the number of voters registered. *See* NRS 293.805. Therefore, we interpret NRS 293.805 as having a general intent requirement.

NRS 293.805's terms are not ambiguous, and one would know that they are violating the statute. NRS 293.805 provides a person of ordinary intelligence sufficient notice of what conduct the statute prohibits and is not standardless as to encourage discriminatory enforcement. Accordingly, we conclude that the statute is not unconstitutionally vague.

## CONCLUSION

The specific restrictions set forth in NRS 293.805 place a minimal burden on First Amendment rights as the statute only prohibits payment of those who register voters based upon the number of voters one registers and the number of voters one registers for a particular political party. Nevada's interest in protecting the integrity of its election process and preventing voter registration fraud, when viewed in relation to this minimal burden, is sufficiently weighty to justify NRS 293.805's restrictions. Further, NRS 293.805 is not unconstitutionally vague. Accordingly, we affirm the judgment of conviction.

DOUGLAS and PARRAGUIRRE, JJ., concur.