130 Nev., Advance Opinion 73

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| DEJA VU SHOWGIRLS OF LAS VEGAS, LLC, A NEVADA LIMITED LIABILITY COMPANY, D/B/A DEJA VU SHOWGIRLS; LITTLE DARLINGS OF LAS VEGAS, D/B/A LITTLE DARLINGS; K-KEL, INC., D/B/A SPEARMINT RHINO GENTLEMEN'S CLUB; OLYMPUS GARDEN, INC., D/B/A OLYMPUS GARDEN; SHAC, LLC, D/B/A SAPPHIRE; THE POWER COMPANY, INC., D/B/A CRAZY HORSE TOO GENTLEMEN'S CLUB; AND D. WESTWOOD, INC., D/B/A TREASURES, Appellants, vs. NEVADA DEPARTMENT OF TAXATION; NEVADA TAX COMMISSION; AND THE STATE OF NEVADA BOARD OF EXAMINERS, Respondents. | No. 60037<br><br>FILED<br><br>SEP 18 2014<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a district court summary judgment rejecting a facial challenge to the constitutionality of Nevada's Live Entertainment Tax and denying injunctive relief as to the enforcement of that tax. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Affirmed.*

Lambrose Brown and William H. Brown, Las Vegas; Shafer and Associates and Bradley J. Shafer, Lansing, Michigan,
for Appellants Deja Vu Showgirls of Las Vegas, LLC; Little Darlings of Las Vegas; K-Kel, Inc.; Olympus Garden, Inc.; The Power Company, Inc.; and D. Westwood, Inc.

14-30949

Greenberg Traurig, LLP, and Mark E. Ferrario and Brandon E. Roos, Las Vegas,
for Appellant SHAC, LLC.

Catherine Cortez Masto, Attorney General, Blake A. Doerr and David J. Pope, Senior Deputy Attorneys General, and Vivienne Rakowsky, Deputy Attorney General, Carson City,
for Respondents.

---

BEFORE THE COURT EN BANC.

## *OPINION*

By the Court, DOUGLAS, J.:

In this opinion, we consider whether, on its face, Nevada's Live Entertainment Tax violates free speech rights under Article 1, Section 9 of the Nevada Constitution or the First Amendment to the United States Constitution. We also address whether the district court was required to entertain appellants' as-applied challenge to the Tax when they failed to exhaust their administrative remedies on that issue. Regarding appellants' facial challenge, we conclude that the Tax does not violate the First Amendment as related to speech (*i.e.*, dance), and we therefore affirm the district court's summary judgment as to this issue. As for appellants' as-applied challenge, we hold that appellants were required to exhaust their administrative remedies on this issue before seeking relief in the district court, and thus, we affirm the district court's dismissal of the as-applied challenge for lack of subject matter jurisdiction.

## BACKGROUND

In 2003, the Nevada Legislature enacted the Live Entertainment Tax, which imposes an excise tax on certain business transactions completed at facilities providing "live entertainment." *See* NRS 368A.200(1). "'Live entertainment' means any activity provided for pleasure, enjoyment, recreation, relaxation, diversion or other similar purpose by a person or persons who are physically present when providing that activity to a patron or group of patrons who are physically present." NRS 368A.090(1). Nevada's Live Entertainment Tax (NLET) imposes a ten-percent tax on any amounts paid for admission and for food, refreshments, and merchandise provided within a live-entertainment facility having a maximum occupancy of less than 7,500 persons. NRS 368A.200(1). When a live-entertainment facility has a maximum occupancy of at least 7,500 persons, however, NLET only imposes a five-percent tax on admission charges. *Id.*

At its inception, NLET provided ten exemptions dependent on, *inter alia*, the location and size of a facility providing live entertainment, the entity status of a provider,[1] and, in several instances, the type of entertainment provided.[2] NRS 368A.200(5) (2003). Among other things, the 2003 version of NLET included an exemption for "[l]ive entertainment that [was] not provided at a licensed gaming establishment if the facility

---

[1]NLET exempted "[l]ive entertainment that is provided by or entirely for the benefit of a nonprofit religious, charitable, fraternal or other organization that qualifies as a tax-exempt organization . . . ." from being subject to the tax. NRS 368A.200(5)(b) (2003).

[2]NLET also exempted "[a]ny boxing contest or exhibition governed by the provisions of chapter 467 of NRS" from being subject to the tax. *See* NRS 368A.200(5)(c) (2003).

in which the live entertainment [was] provided [had] a maximum seating capacity of less than 300." NRS 368A.200(5)(d) (2003). The initial statutory scheme also provided an exemption for gaming establishments "licensed for less than 51 slot machines, less than six games, or any combination of slot machines and games within those respective limits, if the facility in which the live entertainment [was] provided [had] a maximum seating capacity of less than 300." NRS 368A.200(5)(e) (2003).

Since its enactment, the Legislature has amended NLET's provisions on multiple occasions. In 2005, the Legislature, among other things, created eight exceptions to NLET's definition of "live entertainment."[3] NRS 368A.090(2)(b) (2005). Additionally, the Legislature changed the maximum seating capacity language in NRS 368A.200(5)(d)-(e) (2003) to "maximum occupancy," and reduced that provision's occupancy from 300 to 200. NRS 368A.200(5)(d)-(e) (2005). The Legislature also added six new exemptions, including exempting certain National Association for Stock Car Auto Racing (NASCAR) events from being subject to the tax. NRS 368A.200(5)(k)-(p) (2005). Two years later, the Legislature added another exemption from the tax for professional minor league baseball contests, events, and exhibitions. NRS 368A.200(5)(p) (2007).[4]

---

[3]For example, the statute was amended to exclude "[t]elevision, radio, closed circuit or Internet broadcasts of live entertainment" and "[a]nimal behaviors induced by animal trainers or caretakers primarily for the purpose of education and scientific research" from NLET's definition of "live entertainment." NRS 368A.090(2)(b)(5), (7) (2005).

[4]In the Legislature's 2007 amendment, NRS 368A.200(5)(p) (2005) was moved to NRS 368A.200(5)(q), with the baseball exemption designated as NRS 368A.200(p). 2007 Nev. Stat., ch. 547, § 1, at 3434.

In April 2006, appellants, which are all exotic dancing establishments, filed suit against respondents in the United States District Court for the District of Nevada seeking a declaration that NLET is facially unconstitutional for violating the First Amendment to the United States Constitution, an injunction against its enforcement, and a refund of all taxes paid under the statute. The federal district court later dismissed this action on respondents' motion, concluding that appellants had failed to show that Nevada's state court and administrative systems deprived them of a plain, speedy, and efficient remedy. Appellants appealed that decision to the United States Court of Appeals for the Ninth Circuit, which later affirmed the lower court's determination.

While the appeal of the dismissal of their federal action was still pending before the Ninth Circuit, appellants filed a de novo action in the Eighth Judicial District Court seeking a declaration that NLET is facially unconstitutional, injunctive relief, a refund of all taxes paid under NLET, and attorney fees and costs (Case 1). Appellants later amended their complaint in Case 1 to include an as-applied constitutional challenge to NLET. Even though Case 1 was pending in the district court, appellants K-Kel, Olympus Garden, SHAC, The Power Company, and D. Westwood filed individual tax refund requests with the Nevada Department of Taxation pursuant to NRS 368A.260(1) on the ground that NLET was facially unconstitutional under the First Amendment. The Department later denied these refund requests and the Nevada Tax Commission affirmed the Department's decision by a written order entered on October 12, 2007, determining that NLET was facially constitutional.

Based on the Department's and Commission's denials of their refund requests, appellants filed a second de novo action in the Eighth

Judicial District Court on January 9, 2008 (Case 2). In this complaint, appellants argued that NLET was facially unconstitutional and sought a refund, declaratory and injunctive relief, and damages. Nearly three years later, appellants amended their Case 2 complaint to include an as-applied challenge to NLET. The district court then entered an order coordinating Cases 1 and 2 and consolidating their declaratory relief claims.

After hearing arguments on respondents' re-noticed motion for partial summary judgment and motion to dismiss the as-applied challenge, the district court entered an order limiting Case 1 to only appellants' facial challenge to NLET and permanent injunction request. In doing so, the district court dismissed the pending as-applied challenge in Case 1 for lack of subject matter jurisdiction based on appellants' failure to exhaust their administrative remedies and dismissed Case 2 in its entirety, also on subject matter jurisdiction grounds, because appellants had filed a de novo action instead of a petition for judicial review per NRS 233B.130. Appellants subsequently appealed the dismissal of Case 2 to this court, and that appeal is before us in the companion case addressed in *Deja Vu Showgirls v. State, Department of Taxation (Deja Vu I)*, 130 Nev. ___, ___ P.3d ___ (Adv. Op. No. 72, September 18, 2014).

Appellants and respondents ultimately filed competing motions for summary judgment on the remaining issues in Case 1. The district court granted respondents' summary judgment motion, denying appellants' summary judgment motion in the process. The district court concluded that NLET did not facially violate the First Amendment because it is a content-neutral and generally applicable tax that does not target constitutionally protected activity. In making its determination,

the district court only considered the statute's language. Additionally, as a consequence of its decision, the district court necessarily rejected appellants' request for a permanent injunction.

## DISCUSSION

### I.

We first address whether the district court erred by dismissing appellants' as-applied challenge from Case 1 for lack of subject matter jurisdiction.

In Nevada, a district court lacks subject matter jurisdiction to consider a taxpayer's claim for judicial relief unless that taxpayer has exhausted its administrative remedies. *State v. Scotsman Mfg. Co., Inc.*, 109 Nev. 252, 254, 849 P.2d 317, 319 (1993).[5] We have recognized limited exceptions to that rule, however, when a statute's interpretation or constitutionality is at issue, or when the initiation of administrative proceedings would be futile. *Id.* at 255, 849 P.2d at 319. With those exceptions in mind, appellants contend that the district court improperly dismissed their as-applied challenge to NLET because that challenge involved constitutional issues.[6] Whether the district court erred by

---

[5]*Scotsman* uses "subject matter jurisdiction" with reference to a party's failure to exhaust administrative remedies. We note but do not decide the question of whether the failure to exhaust administrative remedies is jurisdictional or a claim prerequisite. *See* II Richard J. Pierce, Jr., *Administrative Law Treatise* §§ 15.2, 15.3 (5th ed. 2010 & Supp. 2014).

[6]We reject appellants' assertion that initiating administrative proceedings for their as-applied constitutional challenge to NLET before the Department would have been futile because they offer no cogent argument. *See Berkson v. LePome*, 126 Nev. ___, ___, 245 P.3d 560, 566 (2010) (stating that "[i]t is well established that this court need not consider issues not supported by cogent argument . . ."). Appellants' one-sentence argument on this issue does not support the proposition that the

*continued on next page . . .*

dismissing appellants' as-applied challenge for lack of subject matter jurisdiction is a question of law that we review de novo. *See Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009).

It is undisputed that appellants failed to exhaust their administrative remedies for their as-applied constitutional challenge. And while appellants argue that there is a general exception for claims involving constitutional issues, this argument ignores the distinction drawn by Nevada authority between facial and as-applied challenges in this context. *See Malecon Tobacco, L.L.C. v. State ex rel. Dep't of Taxation*, 118 Nev. 837, 841, 59 P.3d 474, 477 (2002). While facial constitutional challenges may bypass the administrative exhaustion requirement, we have held that as-applied constitutional challenges hinging on factual determinations cannot. *Id.* In making that determination, we reasoned that given an agency's expertise in the area of the dispute, it is in the best position to make the factual determinations necessary to resolve that dispute. *See id.* at 840-41, 59 P.3d at 476-77. Thus, because appellants failed to raise their as-applied challenge to NLET before the Department—a challenge that hinges on factual determinations not yet made—we conclude that they were required to exhaust their administrative remedies, and therefore, we affirm the district court's dismissal of appellants' as-applied challenge.

---

*. . . continued*

Department, having never had appellants' as-applied challenge before it, would not have fully considered that challenge if it had been properly raised.

II.

With appellants' as-applied challenge no longer before us, we now consider whether NLET is facially unconstitutional for violating free speech rights (*i.e.*, dance) under Article 1, Section 9 of the Nevada Constitution or the First Amendment to the United States Constitution.[7]

This court reviews constitutional challenges to a statute de novo. *Busefink v. State*, 128 Nev. ___, ___, 286 P.3d 599, 602 (2012). In the First Amendment context, there is a "strong presumption in favor of duly enacted taxation schemes." *Leathers v. Medlock*, 499 U.S. 439, 451 (1991). As the Supreme Court has stated, "Inherent in the power to tax is the power to discriminate in taxation," and thus, "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Id.* (internal quotation omitted). Accordingly, in such circumstances, a statute's "presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." *Id.* at 451-52 (internal quotations omitted).

When making a facial challenge to a statute, the challenger generally bears the burden of demonstrating that there is no set of circumstances under which the statute would be valid. *See Busefink*, 128 Nev. at ___, 286 P.3d at 602. But if a court concludes that a heightened

---

[7]We note that Article 1, Section 9 of the Nevada Constitution "affords no greater protection to speech activity than does the First Amendment to the United States Constitution." *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 722, 100 P.3d 179, 187 (2004). Accordingly, our resolution of appellants' challenge to NLET based on the United States Constitution also resolves appellants' challenge under the Nevada Constitution.

level of scrutiny applies, the general presumption regarding a statute's constitutionality is reversed, and the State bears the burden of demonstrating the statute's constitutionality.[8]  *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000).  With the aforementioned standards in mind, our analysis will focus on determining what level of scrutiny applies in our review of NLET's constitutionality.

## A.

Before reaching the heart of this appeal, we must first dispose of appellants' assertion that, under *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), NLET violates the First Amendment because it directly taxes live entertainment, which they maintain is categorically protected under the First Amendment.  In *Murdock*, multiple Jehovah's Witnesses challenged their convictions for violating an ordinance that prohibited all soliciting and canvassing without first obtaining a license by paying a flat license tax.  319 U.S. at 106-07.  In concluding that the ordinance was unconstitutional as applied to the petitioners, and therefore reversing their convictions, the Supreme Court recognized that "a person cannot be compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution."  *Id.* at 114 (internal quotation omitted).

---

[8]Although not discussed by the parties, we note that appellants' allegation that NRS 368A.200 violates the First Amendment satisfies the preliminary state actor requirement.  *See S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 409-10, 23 P.3d 243, 247 (2001) (explaining that the First Amendment, applied to the states through the Fourteenth Amendment, only provides protection from a government's abridgment of free speech rights).

Appellants' interpretation and application of the *Murdock* case to NLET is fundamentally flawed. First, the tax at issue in *Murdock* was a flat license tax, which was required to be paid before the petitioners in that case could exercise their rights under the First Amendment. The Supreme Court specifically distinguished that kind of tax from taxes on income, property, and other taxes that relate to the scope of activities or realized revenues. *Id.* at 112-13. Appellants' attempt to expand the applicability of *Murdock*'s holding to NLET, which is an excise tax on admission fees and the sale of certain products, disregards this distinction. Moreover, appellants' expansion argument was expressly rejected by the Court in a later decision that limited *Murdock*'s holding "to apply only where a flat license tax operates as a prior restraint on the free exercise of religious beliefs." *Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378, 389 (1990) (holding that California's six-percent sales tax on retail sales of personal property was not unconstitutional as applied to a religious organization's sale of religious books, tapes, records, and nonreligious materials).

Second, in making their facial challenge, appellants rely on the unsubstantiated assertion that NLET, in all of its applications, infringes on the First Amendment by regulating protected activities because entertainment is presumptively protected as a category. In rejecting appellants' argument, we note that NLET does not regulate live entertainment. Moreover, despite its misnomer, NLET does not actually tax live entertainment. Instead, it imposes an excise tax on business transactions which neither inhibits nor burdens the expressive conduct occurring at live-entertainment facilities. *See* NRS 368A.200. Therefore, because NLET does not operate as a prior restraint on constitutionally

protected activities, we reject appellants' arguments on this issue. *See Jimmy Swaggart Ministries*, 439 U.S. at 386.

B.

The remainder of our analysis addresses appellants' arguments that NLET is a differential tax of speakers protected under the First Amendment that triggers strict scrutiny because it discriminates on the basis of the content of taxpayer speech, targets a small group of speakers, and threatens to suppress speech. Accordingly, we will address those arguments in that order.

Preliminarily, we recognize that the degree of protection afforded to erotic dance under the First Amendment is uncertain. *See City of Las Vegas v. Eighth Judicial Dist. Court*, 122 Nev. 1041, 1052, 146 P.3d 240, 247 (2006) ("Arguably, erotic dance is expressive conduct that communicates, which could be deserving of some level of First Amendment protection."). This uncertainty arises from the Supreme Court's plurality opinion in *Barnes v. Glen Theatre, Inc.*, which states that "nude dancing . . . is expressive conduct within the *outer perimeters* of the First Amendment," and therefore is subject to only an intermediate level of scrutiny. 501 U.S. 560, 565-67 (1991) (emphasis added). To the extent that nude dancing is protected under the First Amendment, we acknowledge that "society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 70 (1976) (plurality opinion). With that said, we note that the line of cases that appellants rely on and that we use in the remainder of this disposition deal exclusively with taxes on the press, which raise "concerns about censorship of critical information and opinion." *Leathers*, 499 U.S.

SUPREME COURT
OF
NEVADA

(O) 1947A

at 447. Accordingly, we are confident that if NLET satisfies those legal standards, the statute is constitutional on its face.

We now turn to appellants' assertion that NLET discriminates based on the content of taxpayer speech. Appellants contend that, in enacting and amending NLET, the Legislature discriminated against taxpayers providing adult-oriented entertainment and favored taxpayers presenting family-oriented live entertainment. In making this argument, appellants focus on NRS 368A.090's exceptions to the definition of "[l]ive entertainment" and NRS 368A.200(5)'s exemptions for certain live entertainment facilities identified by their size, location, entity status, and in some cases, the type of entertainment being provided. Appellants allege that NLET's exemptions for NASCAR, professional baseball, and boxing events are examples of content-based discrimination. Respondents disagree, arguing that NLET is a generally applicable tax and not discriminatory, and that no classifications are based on the content of taxpayers' messages.

We begin our consideration of appellants' arguments by emphasizing that "a tax scheme that discriminates among speakers does not implicate the First Amendment unless it discriminates on the basis of ideas." *Leathers*, 499 U.S. at 450. Thus, a tax that discriminates between speakers on a basis other than ideas is not by itself constitutionally suspect. To determine whether a taxing statute discriminates on the basis of ideas, we primarily look to the statute's language and secondarily consider the difference in the messages of those who are and are not being taxed. *See id.* at 449.

For example, in *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987), the Supreme Court looked to the language of Arkansas's tax on receipts from sales of tangible personal property and concluded that

the tax violated the First Amendment because it discriminated based on the content of taxpayer speech. In reaching this conclusion, the Court focused on the tax's content-based exemption for religious, professional, trade, and sports publications. *See id.* at 224, 229-31. The Court emphasized that Arkansas's tax "is particularly repugnant to First Amendment principles" because "a magazine's *tax status depends entirely on its content.*" *Id.* at 229 (emphasis added).

Unlike the tax at issue in *Arkansas Writers*, it cannot be said that whether a live-entertainment provider is subject to NLET depends exclusively or even primarily on the content of the entertainment being provided. *See generally* NRS 368A.090; NRS 368A.200. While NLET exempts certain performances, the statute's language does not refer to the content of any taxpayer's message. *See Leathers*, 499 U.S. at 449. Additionally, the Supreme Court has expressed that discrimination among taxpayers, whether those taxpayers are speakers or nonspeakers, is inherent and permissible in creating tax classifications that allow states the flexibility needed to fit their tax programs to local needs. *See id.* at 451. Although, as appellants point out, several exemptions include speakers, *i.e.*, NASCAR, boxing, and professional baseball events, unless based on those speakers' ideas, such discrimination is insufficient to make NLET constitutionally suspect. *Id.* at 444, 451.

Having analyzed NLET's language, we now consider the messages of those who are and are not taxed under the statute. Appellants argue that NLET's exemptions and exceptions are based on family-oriented versus adult-oriented messages provided at live entertainment facilities. This assertion lacks merit. Many facilities providing what appellants would classify as family-oriented live entertainment are subject to NLET, including concert venues, circuses,

and fashion shows. *Compare* NRS 368A.090(2)(a), *and* 368A.200(1), *with* NRS 368A.090(2)(b), *and* NRS 368A.200(5). Additionally, multiple facilities furnishing adult-oriented live entertainment, such as boxing and charity events, are exempted. NRS 368A.200(5)(b)-(c). Thus, facilities subject to NLET provide a variety of entertainers who in turn bring diverse messages. Based on NLET's language and the messages of those who are and are not taxed under its provisions, we conclude that the statute does not discriminate based on the content of taxpayer speech.

Appellants next argue that NLET, through its exceptions and exemptions, impermissibly targets a small group of speakers, including appellants, to bear the full burden of the tax. We disagree.

In *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 579, 592 (1983), the Supreme Court concluded that a use tax resembled a "penalty for a few" and was unconstitutional because only 13 publishers producing 16 out of 374 paid circulation papers were obligated to pay the tax. Later, in *Arkansas Writers*, the Court determined that the sales tax at issue was unconstitutional, in part, because at most only three publications were obligated to pay the tax. *See* 481 U.S. at 229. Further, as explained by the Court in a different case, "[t]he danger from a tax scheme that targets a small number of speakers is the danger of censorship . . . ." *Leathers*, 499 U.S. at 448.

As will be explained below, closer by comparison to this case is *Leathers v. Medlock*. In *Leathers,* the Supreme Court considered the constitutionality of Arkansas's state sales tax on tangible property and specified services that excluded or exempted certain segments of the media and not others. *Id.* at 441-42. Cable service providers challenged the tax after they became subject to its provisions by a legislative

SUPREME COURT
OF
NEVADA

(O) 1947A

amendment. *Id.* at 442. In concluding that Arkansas's tax was constitutional and did not impermissibly target a small group of speakers, the Court determined that the use tax was of general applicability and posed no danger of censorship given the wide variety of programming subject to its provisions. *See id.* at 447, 449.

Although NLET is not a generally applicable sales tax like the tax addressed in *Leathers*, it reaches a much broader base than the taxes at issue in *Arkansas Writers* and *Minneapolis Star*. As evidence, the record demonstrates that in 2004 over 90 live-entertainment facilities were subject to and paid taxes under NLET. These tax payments came from a variety of live entertainment establishments, including raceways, nightclubs, performing arts centers, gentlemen's clubs, and facilities hosting sporting and one-time events. While we acknowledge that these numbers were from 2004 and thus predate NLET's additional exemptions and exceptions, we remain convinced that, even with those amendments, NLET does not impermissibly target a small group of speakers and therefore does not pose any danger of censorship.[9]

Appellants lastly claim that based on its exemptions and exceptions, the only possible purpose behind NLET was to suppress speech.[10] But this assertion ignores the idea that "[i]nherent in the power

---

[9]We note that the 2005 amendments to the exemptions found in NRS 368A.200(5)(d)-(e) reducing the qualifying maximum occupancy levels from 300 to 200 actually expanded NLET's tax base. 2005 Nev. Stat., ch. 484, § 10, at 2483; 2005 Nev. Stat., ch. 9, § 38, at 142.

[10]Appellants also assert that the Legislature's inclusion of exotic dancing establishments was intentional and therefore unconstitutional. We note that delving into legislative intent in this context is neither required nor prudent. We agree with the Supreme Court when it stated, "[i]nquiries into congressional motives or purposes are a hazardous
*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

16

to tax is the power to discriminate in taxation," and that unless "a classification is a hostile and oppressive discrimination against particular persons and classes," it will not trigger heightened scrutiny. *Leathers*, 499 U.S. at 451-52 (internal quotations omitted).

In *Leathers*, the Supreme Court determined that Arkansas's choice to exclude and exempt certain media from a generally applicable tax was not hostile or oppressive because it did not suggest an intention to suppress any ideas. *Id.* at 452-53. Similarly, the Nevada Legislature has decided to exempt and exclude certain venues and live entertainment from an otherwise broadly applicable tax. A facial examination of NLET's provisions reveals that this taxation scheme is neither directed at nor presents the danger of suppressing particular ideas. *See generally* NRS Chapter 368A. Moreover, nothing in the record gives us reason to believe that NLET poses any danger of suppressing ideas.

Because NLET does not discriminate on the basis of the content of taxpayer speech, target a small group of speakers, or otherwise threaten to suppress ideas or viewpoints, we determine that heightened scrutiny does not apply. Instead, rational basis review applies, and the statute is presumed to be constitutional. We conclude that NLET is constitutional on its face because appellants have failed to demonstrate that NLET is not rationally related to a legitimate government purpose.

---

*. . . continued*

matter," and such speculation should not be the basis of voiding legislation "which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it." *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968). Accordingly, we decline appellants' invitation to scrutinize NLET's legislative history.

*See Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 301, 183 P.3d 895, 903-04 (2008); *see also Arata v. Faubion*, 123 Nev. 153, 159-60, 161 P.3d 244, 249 (2007) (explaining that as long as a reasonable factual situation can be conceived to justify it, a statute will be upheld under rational basis review).

Based on the foregoing analysis, we affirm the district court's decisions dismissing appellants' as-applied challenge to NLET and concluding that NLET is facially constitutional.[11]

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

---

[11]We have considered all of appellants' other arguments, including those seeking additional discovery and an injunction, and conclude that they lack merit.